## S. ·H. GRAVES ET AL. v. W. V. MORSE & COMPANY.

### FILED JUNE 21, 1895.   No. 6410.

Sales: MERCHANDISE: TIME TO DELIVER: ACCEPTANCE: EVI-
DENCE: REPLEVIN.  A merchant ordered some rubber goods
from a wholesale house, but the goods were not shipped when
ordered.  The merchant was called away from home, and be-
fore leaving instructed his clerk, whom he left in charge of his
business, not to receive the rubber goods if they should come as
they had not been shipped in a reasonable time after they were
ordered.  While the merchant was absent the rubber goods ar-
rived, and the clerk paid the freight on them and stored them
not unpacked in a warehouse belonging to the merchant.  A
day or two after the merchant returned home he sold his entire
stock of merchandise, without an inventory thereof, and deliv-
ered possession of it to one G.  At the time of this sale the mer-
chant was not aware that the rubber goods had arrived.  The
wholesale merchant brought replevin for the rubber goods
against the merchant's vendee.  The jury found a verdict in
favor of the wholesale merchant.  *Held,* (1) That the evidence
sustained the finding; (2) that the sole question was whether
the rubber goods had been accepted by the merchant, and the
title to said goods vested in him prior to the time he made ,the
sale of his stock of merchandise to G.; (3) that the test was
whether, if the wholesale merchant had sued the merchant for
the price of the rubber goods, the evidence would sustain a find-
ing in favor of the merchant; (4) that it was the duty of the
wholesale merchant to deliver the quality and quantity of goods
ordered, and to deliver them within a reasonable time, and the
wholesale merchant not having done this the merchant had a
right to decline to receive the goods; (5) whether, under all the
facts and circumstances in evidence in the case, the merchant did
, accept the goods and become liable for their payment to the
wholesale merchant, was a question for the jury, and properly
submitted by the instructions of the court.

ERROR from the district court of Buffalo county.  Tried
below before HOLCOMB, J.

*Dryden & Main,* for plaintiffs in error.

*Calkins & Pratt, contra.*

RAGAN, C.

In this case the finding of the jury enables us to say that the following facts are established:   On and prior to the first of November, 1890, H. H. Matteson was engaged in the mercantile business in the town of Shelton, this state.   On or about that time he ordered certain rubber goods from W. V. Morse & Co., of Omaha, Nebraska. These goods were not shipped to him when ordered.  About the 16th of November Matteson went to the state of Iowa on business, leaving his wife and a clerk named Lilly in charge of the store.   Before Matteson left he instructed them if the rubber goods previously ordered from Morse & Co. should arrive not to accept them, as Morse & Co. had delayed their shipment too long.   On the 20th or 21st of November, and while Matteson was absent, the rubber goods arrived, and the clerk Lilly, without the knowledge of Mrs. Matteson, paid the freight on them and stored them not unpacked in a warehouse in which Matteson was accustomed to keep flour, provisions, hardware, etc.   Matteson returned on the 22d or 23d of November and sold his entire stock of merchandise to S. H. Graves and George Mortimer.   The consideration for this sale was a debt of $2,500, which Matteson owed a bank in Shelton, $1,500 which he owed J. B. Farwell & Co., and which debt was assumed by Matteson's vendees, and a half section of real estate lying near said town of Shelton.   At the time this sale was made possession of the stock of merchandise was given to Graves and Mortimer.   At the time of the sale no invoice of the property was made, and Matteson did not know that the rubber goods ordered of Morse & Co. had arrived.   In a day or two after said sale Morse & Co. replevied from Graves & Mortimer the rubber goods mentioned above, still remaining in boxes unpacked in said warehouse, Morse & Co. claiming to be the owners of said goods.   There was a trial to a jury,

with a verdict and judgment in favor of Morse & Co., and Graves & Mortimer have prosecuted to this court a petition in error.

1. The first assignment of error is that the district court erred in permitting Morse & Co. to prove on the trial the value of the stock of merchandise at the time it was sold by Matteson to Graves & Mortimer. On the trial H. H. Matteson was examined as a witness in behalf of Morse & Co., and was asked by their counsel this question: "What was the value of the stock at the time of the transfer?" To this question counsel for Graves & Mortimer objected, as incompetent, immaterial, and irrelevant. The court overruled the objection and they excepted, and the witness answered: "About $13,000." We think this evidence was incompetent, immaterial, and irrelevant under the issues, but we do not think that Graves & Mortimer were prejudiced by its admission.

2. The remaining assignment of error is that the court erred in giving to the jury the following instruction: "4. The real question for you to determine is whether or not the witness Matteson had received and accepted the goods in question after they were shipped by the plaintiff. If he did receive and accept the goods, then the title would pass from the plaintiff to Matteson and he could pass a good title to the defendant; but if the witness Matteson did not receive and accept the goods from the plaintiff he has no title to the goods, and none could pass to the defendant, and the plaintiff could maintain replevin therefor. If the witness Lilly received the goods on behalf of the witness Matteson, but without authority from the said Matteson, or against his express directions, then this would not be an acceptance of the goods, and no title would pass unless the said Matteson afterwards ratified or consented to the action in that respect of the witness Lilly. If you find from the evidence that the witness Lilly was authorized by the witness Matteson to receive and accept the goods for him, and

that he did receive and accept the goods in question, and
was not directed by Matteson, or his wife acting for him,
not to receive the goods, then if he accepted the goods it
would be an acceptance by Matteson, and the title thereto
passed from plaintiff to Matteson, and would pass to the
defendant in the sale of the stock of goods to him, unless
expressly reserved by Matteson when he made the sale.
If from the evidence you find that the witness Lilly had
no authority to receive and accept the goods, or was directed
not to do so by Matteson, or his wife acting for him, and
the goods were not in fact received by Matteson, then the
title never passed from the plaintiff and they are entitled
to recover in this action." We do not think the court
erred in giving this instruction. The sole question liti-
gated at the trial was whether the rubber goods had been
accepted by Matteson and the title of said goods vested in
him prior to the time he made the sale of his stock of mer-
chandise to Graves & Mortimer. The case must be looked
at as though this was a suit by Morse & Co. against Matte-
son to recover the purchase price of these rubber goods.
It was the duty of Morse & Co. to deliver the quality and
quantity of goods ordered and to deliver them within a
reasonable time. They not having delivered these goods
when ordered, or within a reasonable time thereafter, Matte-
son had a right to decline to accept them; and whether under
all the facts and circumstances in evidence in this case he
did accept them so as to become liable for their payment to
Morse & Co. was a question for the jury and properly sub-
mitted by the instruction complained of. The criticism
made by counsel for Graves on the instruction is that by it
the court ignored the question of good faith on the part of
Graves in purchasing these rubber goods from Matteson.
Whether or not Graves & Mortimer knew that these rub-
ber goods were in the warehouse at the time they purchased
this stock was a question for the jury; and if we assume
that they were aware of the presence of the rubber goods

there, and supposed they were buying those goods as well as the others, still the evidence of Matteson is that he did not know that those rubber goods had been received at Shelton until they were replevied by Morse & Co.; and the jury by its verdict has found this statement of Matteson to be true. The question of the good faith of Graves & Mortimer in making this purchase was not an issue in this case. If Matteson did not own the rubber goods he could not convey the title thereof to Graves. The whole question was a question of fact, namely, had Matteson accepted these goods at or prior to the time he made the sale to Graves? Had his conduct been such as to amount to an acceptance of the rubber goods on his part and estop him, in a suit against him by Morse & Co. for their price, from asserting the defense of non-delivery or non-acceptance? And this is in effect what the court told the jury by the instruction criticised. There is no error in the record and the judgment of the district court is

AFFIRMED.