DANIEL C. ARMSTRONG vs. COLUMBIA WAGON COMPANY, a corporation of the State of Pennsylvania.

*Foreign Attachment—Sale of Lumber—Acceptance—Refusal to Accept—Opportunity to Inspect—Waiver of Defects.*

1. If after a fair opportunity for the inspection of a car-load of lumber the defendant unconditionally accepted the same as in conformity with the contract, he could not afterwards repudiate such acceptance and refuse to pay the contract price for the lumber so accepted, even though the said lumber was not fit for the use for which it had been ordered, or not in conformity with said order, as such acceptance would be a wavier of all such defects.

2. On the other hand, the defendant was not bound to accept, nor bound to pay for said lumber if he did not accept it, unless it was reasonably fit for the use for which it was offered, and unless it was substantially of the quality described in the order.

(*April* 12, 1907.)

JUDGES SPRUANCE and BOYCE sitting.

*Robert C. White* for plaintiff.

*John M. Richardson* and *Charles W. Cullen* for defendant.

Superior Court, Sussex County, April Term, 1907.

FOREIGN ATTACHMENT CASE (No. 4, October Term, 1905).

SPRUANCE, J., charging the jury:

Gentlemen of the jury:—Daniel C. Armstrong, the plaintiff, brings this action against the Columbia Wagon Company, a corporation of the State of Pennsylvania, the defendant, to recover for 6257 feet of white oak lumber at $33.00 per thousand less the freight paid by the defendant, together with interest from July first 1904, making the total amount of $199.30.

The plaintiff was a lumber dealer residing in Milton, in this county, and the defendant company was engaged in the manufacture of wagons in Columbia, Pennsylvania. All of the written papers to which I shall refer, as well as others, are in evidence, and will be subject to your examination. On April 23, 1904, the defendant wrote to the plaintiff as follows:

"In regards to an order for some oak, we have decided to let you get one out and ship it some time in July, as we have all we need now until we take inventory at that time. Enclose please find the order."

The order enclosed in said letter was numbered 4390 and dated April 25, 1904. The said order under the heads of Bolsters and Coupling Poles gave the number of pieces, their sizes, length and number of pattern, and continued as follows: "Price $33.00 delivered.

"This must be white oak lumber, good, clean tough stock, you have the privilege in cutting them in multiples or in other words take pattern number 7 you can cut it 9 feet long or 13½ ft. long."

Under date of June 8th the defendant wrote to the plaintiff that it did not want the lumber shipped before the first week in July.

On June 9, 1904, the plaintiff wrote the defendant as follows:

"Your favor of the eighth instant just received, and I will ship the carload of Bolsters and Coupling Poles the first week in July as per your request."

On July first, 1904, the plaintiff shipped from Milton to the defendant in Columbia, Pennsylvania, a car load of lumber intended to fill said order. The plaintiff gave no notice to the defendant of said shipment until he sent to it under date of July 7, 1904, the following letter:

"According to your order of April 25th, I have shipped you one car load of of bolsters and coupling poles for which you may either send me note signed by your concern, note for me to sign, or check 2% off for the amount of the bill rendered, which please send by return mail, as I told you in some of my former letters that I was unable to hold and dry lumber, which I have partly done in this case. Hoping that the lumber will prove satisfactory, and I may hear from you by return mail, I remain" etc.

Enclosed in said letter was the plaintiff's bill against the defendant company for said lumber, on which was written "Shipped on car P. R. R. No. 12078.

"Order number 4390."

It appears from the testimony on behalf of the defendant that the said car containing said lumber reached Columbia on the eighth or ninth of July and before the defendant had received the plaintiff's said letter of July 7th, and that on its arrival and before the said receipt of said letter the defendant unloaded said car under the misapprehension that it was from a customer of theirs in York and not from the plaintiff, and that when said car was unloaded a large part of the lumber was found to be unfit for the use for which it it had been purchased, and not of the quality designated in their said order, and that said lumber when so unloaded was piled up in their yard where it has since remained, and has never been accepted or used by them.

Theupon the following letter was sent by the defendant to the plaintiff:

"Your letter of the 7th inst., the bill under July 1st for one car of dimension lumber just received, and we regret to say that the bulk of this lumber is entirely unfit for our purpose. We are surprised that you send us such lumber. Full of knots and inferior quality.

"The writer when there went over this carefully with you and showed you what stock we could use, and the car you sent us then was alright. We unloaded this car not knowing who it was from, sorted out what little was good and put it on a pile by itself. Had we known it was from you we would not have unloaded it, but one of our old customers ask us to take a car off his hands, which we (he) told us was only partly good, but it was here by mistake and we did it to help him out.

"When the bill came, we then saw that this car was yours. We do not know what to say then (than) that you had better come up and look it over as soon as possible."

Pursuant to the suggestion of said letter, the plaintiff shortly afterwards went to Columbia for the purpose of obtaining a settlement for said lumber, but after a protracted discussion of the subject, the parties were unable to agree, and the plaintiff returned home, leaving the lumber where it had been unloaded.

For the purpose of this case, it is not material whether the defendant, when the said lumber was unloaded, did or not know that it came from the plaintiff, as the defendant, before accepting said lumber, had the right to unload it and inspect it for the purpose of ascertaining the quantity and quality of the same.

The defendant makes no objection to the time when said lumber was shipped to it, and defends this action solely upon the ground that a large percentage of said lumber was unfit for the use for which it was purchased and greatly inferior to that described in the said order.

The plaintiff, on the other hand, contends that the said lumber was reasonably fit for the purpose for which it was sold and

and that it did substantially conform to the requirements of the said order.

Upon the question as to the quality of said lumber, there is great conflict in the testimony, and it is your duty to determine that question according to the weight of the evidence.    If after a fair opportunity for the inspection of said lumber the defendant unconditionally accepted the same as in conformity with the contract, it could not afterwards repudiate such acceptance and refuse to pay the contract price for the lumber so accepted, even though the said lumber was not fit for the use for which it had been ordered or not in conformity with said order, as such acceptance would be a waiver of all such defects.

On the other hand the defendant was not bound to accept, and is not bound to pay for said lumber if he did not accept it, unless it was reasonably fit for the use for which it was ordered, and unless it was substantially of the quality described in the said order.

Verdict, for plaintiff for $170.78.