COLUMBIA RIVER DOOR COMPANY, APPELLANT, V. H. F. CADY LUMBER COMPANY, APPELLEE.

FILED DECEMBER 4, 1914. No. 17,952.

1. Sales: ACCEPTANCE. Where the purchaser of lumber, who is known to the seller to be a jobber, after an inspection and rejection of the shipment, attempts to sell the lumber to other purchasers, while acting under the order of the seller to "use to best advantage," his attempts will not amount to an acceptance.

2. ———: REFUSAL TO ACCEPT: SUFFICIENCY OF EVIDENCE. Evidence examined, and found sufficient to justify the defendant in refusing to accept the shipment.

APPEAL from the district court for Douglas county: WILLIS G. SEARS, JUDGE. *Affirmed.*

*Montgomery, Hall & Young,* for appellant.

*DeBord, Fradenburg & Van Orsdel, contra.*

BARNES, J.

This was an action to recover the price of a car-load of lumber shipped by the Columbia River Door Company to the H. F. Cady Lumber Company in August, 1907, and billed by plaintiff to Tidball & Company at Morefield, Nebraska. The defendant refused to pay for the shipment, alleging that it did not accept the lumber because it was not what was ordered; that it was defective in kind and quality, and in fact was not merchantable. The cause was tried to a jury, and a verdict was returned for the defendant. Judgment was rendered on the verdict, and the plaintiff has appealed.

It appears that the defendant, a jobber of lumber, on the 2d day of September, 1906, sent an order to the plaintiff for three car-loads of common spruce 2x4's. The first car was shipped to the defendant soon after it made the order; the second car was shipped about six months later, while the third car was not loaded and shipped until a year later, to wit, August 16, 1907. The first car of lumber was received and paid for, but the testimony shows that there was some trouble with the plaintiff about the second car. This car appears to have been loaded with a bad lot of irregular dimension stuff, which contained bad knots, wanes on the corners, was of irregular thickness, and was in fact generally a car of culls. When the second car was shipped the Columbia River Door Company knew that it contained a lot of lumber not up to specifications. By the testimony, as to this car, it was practically admitted that it was not up to standard, and the plaintiff agreed to

deduct $75 from the price of the car, as billed, in order to affect a settlement with the defendant.

Respecting the last car of lumber, the one in controversy, it appears that defendant ordered it shipped direct to Tidball & Company at Morefield, Nebraska, for the reason that it had sold the car to that company. It appears that Tidball & Company had a lumber yard at Morefield and one at Curtis, Nebraska, which is the first station on the Burlington road east of Morefield. The testimony shows that Tidball & Company stopped the car at Curtis and inspected the lumber. John E. Tidball, Jr., testified that it was his duty to inspect lumber before letting it into their stock. He said that upon inspecting the lumber in question he found there were knot holes in some of the sticks as big as half across the 2x4; that he got up and looked on the top of the pile and pulled out a dozen or more of the sticks; that they proved to be knotty, and some were so thin that the planer had not surfaced them; that they were of various thicknesses, and many of the sticks were crooked; that he at once notified the Burlington railroad that they refused the car, and also at once notified the Columbia River Door Company that the lumber was bad, and that they would not accept it. The Cady Lumber Company telegraphed the plaintiff immediately that the lumber would not be accepted, and on receipt of this telegram the plaintiff replied that the lumber was just like the preceding cars, except that part of it was fir instead of being all spruce, and saying, "Use to best advantage." The railroad company subsequently unloaded the lumber on its right of way at Curtis. Neither the Cady Lumber Company nor the Tidball Lumber Company received possession of the lumber, or ever accepted it, and, so far as it appears from the evidence, the lumber is now in the possession of the railroad company or of the plaintiff.

Plaintiff's witness Stucker by his testimony explained why they put fir into the car when only spruce was ordered. He said there was not quite enough spruce in stock to fill it. Mr. White of the Cady Lumber Company testified that his company never consented that the plaintiff might

put any fir lumber into the car. The testimony shows without dispute that the Cady Lumber Company ordered the car in question to fill an order which it had from the Tidball Lumber Company, and that the Tidball Lumber Company ordered a car of spruce. It appears that there was no means whatever by which the Cady Lumber Company or the Tidball Lumber Company could have inspected the lumber before it reached Curtis.

Mr. Stephenson, who was in the employ of the defendant, went to Curtis and viewed the lumber. He testified, in substance, as follows: "I measured perhaps 150 to 200 pieces. Measured them at both ends, in the middle, and on the sides, so as to make sure just what there was of it. I found 2x4's as they would run according to measurement $1\frac{5}{8}$ by $3\frac{5}{8}$. I would find them lacking sometimes as to being as thick as that, having been shaped and ordered as trimmed surfaces on both sides and one edge, which would be surfaced on one side all through the length, and would be surfaced on one edge all through the length; when they were too thin they would not surface. For instance, one edge would be thick enough to surface, and as you got out further it would not surface, and consequently you would have a 2x4 that was surfaced part of the way and rough on the other part. They were thicker on one end than on the other, and you would find the same on the edges instead of being $3\frac{5}{8}$ inches thick, so when you used them for studding or rafters, if you stood them to a line, you could not rafter the other side of them, for they would not surface. If you put a 2x4 under this $3\frac{5}{8}$ at one end, and a $3\frac{1}{8}$ at the other, you can see where your side would be; that is where you were throwed out, because they are not suitable for studding." Stephenson further testified that the 2x4's varied in width as much as one-half an inch. There were very large coarse knots, large knot holes, and some very crooked; the ends not square, broken pieces; some were not the full length for which they were counted, that is 16 feet lengths were not 16 feet long; knot holes would run clear across the 2x4's, or occupy two-thirds of the width of the 2x4. There was other testimony which

showed that only about 60 per cent. of the lumber con-
tained in the car would grade No. 2; that it was poorly
manufactured, uneven in thickness and width, exceedingly
knotty, and contained more or less bark. It also appears
that the Columbia River Door Company had for its prin-
cipal business the manufacture of doors, and had some lum-
ber which they could make into 2x4's which were not suit-
able to be used for that purpose; that they made the sale
of the three car-loads of lumber to the Cady Lumber Com-
pany, intending to use the accumulation of 2x4's made by
them out of lumber, which on account of its various widths
or otherwise could not be made into doors, and that it took
them a year to produce the three car-loads of lumber sold
to the defendant out of such material. After the refusal
of the car, it appears that the defendant, acting on the
direction of the plaintiff to "use to best advantage," spent
considerable time in trying to sell the lumber to other
parties, but failed in its attempt.

The issue as to acceptance raised by the pleadings was
submitted to the jury under the instructions of the court,
and a verdict was returned for the defendant, as above
stated. It is plaintiff's contention that the defendant
accepted the car-load of lumber by attempting to sell it to
other parties. We think this contention is not sustained
by the evidence or the authorities.

*Wolfe Bros. Shoe Co. v. Bishop,* 72 Kan. 687, was a case
where the dispute arose over the quality of certain shoes
and their acceptance. It was there said: "Plaintiff's at-
tempt to sell some of the shoes that were salable while
waiting for defendant's agent to adjust plaintiff's claim
that the consignment was defective, held not to amount to
an acceptance of the entire lot."

In *Schwartz v. Church of the Holy Cross,* 60 Minn. 183,
plaintiff sought to recover for the value of certain altars
which had been ordered constructed and placed in the
church. It was held that the use of some of the altars,
after defendant's refusal to accept them because they
were not manufactured according to specifications, did

not amount to an acceptance, and a judgment for the defendant was affirmed.

In *Lenz v. Blake,* 44 Or. 569, the court said: "The defendant had a reasonable time to inspect the goods after their receipt, and, if they did not correspond with those ordered, the warranty in respect thereto might have rendered that part of the contract tantamount to a condition precedent, thereby authorizing the defendant to repudiate its agreement."

In *Creighton v. Pacific Coast Lumber Co.,* 12 Man. (Can.) 546, it was said: "A purchaser of goods ordered to be sent by railway does not lose his right of rejecting the goods by unloading them from the cars on arrival and teaming them to his own premises, if he then finds them to be inferior to what he had ordered and so notifies the vendor within a reasonable time."

In *Armstrong v. Columbia Wagon Co.,* 66 Atl. 366 (22 Del. 274), we find the following language: "In an action for the price of a car-load of lumber, it was not material whether defendant knew that it came from plaintiff or not before unloading the lumber, as he had the right to unload and inspect it for the purpose of determining the quality and quantity." *Graves v. Morse & Co.,* 45 Neb. 604, and *Bryant v. Thesing,* 46 Neb. 244, are in line with this rule.

The evidence seems clear that defendant was justified in refusing to accept the lumber in question. An examination of the cases cited by counsel for the plaintiff on the question of the right of inspection and the waiver of that right shows that the goods in most of those cases were delivered to the nominal possession of the buyer and held without question or rejection.

From a careful inspection of the record, we are of opinion that it contains no reversible error, and the judgment of the district court is

AFFIRMED.

LETTON, ROSE and FAWCETT, JJ., not sitting.